1

2

3

4

5           UNITED STATES DISTRICT COURT

6           EASTERN DISTRICT OF WASHINGTON

7   TERRYEL L. YEAROUT,

                                            NO: 2:14-CV-0261-TOR
8                    Plaintiff,

                                            ORDER GRANTING DEFENDANT'S
9        v.                                 MOTION FOR SUMMARY
                                            JUDGMENT
10  CAROLYN W. COLVIN, Acting
    Commissioner of Social Security
11  Administration,

12                   Defendant.

13

14        BEFORE THE COURT are the parties' cross-motions for summary

15  judgment (ECF Nos. 14; 17).  The Court has reviewed the administrative record

16  and the parties' completed briefing and is fully informed.  For the reasons

17  discussed below, the Court grants Defendant's motion and denies Plaintiff's

18  motion.

19  ///

20  ///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Garrison*

1  *v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) ("Where the evidence can reasonably

2  support either affirming or reversing a decision, we may not substitute our

3  judgment for that of the ALJ." (internal quotation marks and brackets omitted)).

4  Further, a district court "may not reverse an ALJ's decision on account of an error

5  that is harmless." *Molina*, 674 F.3d at 1111.  An error is harmless "where it is

6  inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1117

7  (internal quotation marks and citation omitted).  The party appealing the ALJ's

8  decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

9  *Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

11         A claimant must satisfy two conditions to be considered "disabled" within

12  the meaning of the Social Security Act.  First, the claimant must be "unable to

13  engage in any substantial gainful activity by reason of any medically determinable

14  physical or mental impairment which can be expected to result in death or which

15  has lasted or can be expected to last for a continuous period of not less than twelve

16  months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's

17  impairment must be "of such severity that he is not only unable to do his previous

18  work[,] but cannot, considering his age, education, and work experience, engage in

19  any other kind of substantial gainful work which exists in the national economy."

20  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education, and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income on November 9, 2010, alleging a disability onset date of September 1, 2009.  Tr. 99, 100, 174-75, 176-81.  These applications were denied initially and upon reconsideration, and Plaintiff requested a hearing.  Tr. 131-33, 134-37, 140-41, 142-44, 147.  A hearing was held before an Administrative Law Judge ("ALJ") on October 15, 2012.  Tr. 32-79.  The ALJ rendered a decision denying Plaintiff benefits on December 17, 2012.  Tr. 8-31.

1    The ALJ found that Plaintiff met the insured status requirements of Title II

2    of the Social Security Act through September 30, 2009.  Tr. 13.  At step one, the

3    ALJ found that Plaintiff had not engaged in substantial gainful activity since

4    September 1, 2009, the alleged onset date.  Tr. 13.  At step two, the ALJ found that

5    Plaintiff had the following severe impairments: obesity; right carpal tunnel

6    syndrome; major depressive disorder; bipolar disorder; obsessive compulsive and

7    panic anxiety disorders; personality disorder, NOS, with borderline and anti-social

8    traits; and cocaine dependence in remission.  Tr. 13-14.  At step three, the ALJ

9    found that Plaintiff did not have an impairment or combination of impairments that

10   meet or medically equal a listed impairment.  Tr. 17.  The ALJ then determined

11   that Plaintiff had the RFC

12       to perform medium work as defined in 20 CFR 404.1567(c) and
         416.967(c) except the claimant is limited to work that does not require
13       more than frequent handling with the right upper extremity; or the
         performance of more than simple routine svp[1] 3 level tasks that do not
14       involve more than brief superficial contact with others.

15

16   [1] "SVP"—short for "specific vocational preparation" level— is "the amount of

17   lapsed time required by a typical worker to learn the techniques, acquire the

18   information, and develop the facility needed for average performance in a specific

19   job-worker situation."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230

20   n.4 (9th Cir. 2009).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

Tr. 19.  At step four, the ALJ found that Plaintiff capable of performing past

relevant work as an agricultural produce packer and industrial cleaner.  Tr. 25.  In

light of this finding, the ALJ concluded that Plaintiff was not disabled under the

Social Security Act and denied her claims on that basis.  Tr. 26.

The Appeals Council denied Plaintiff's request for review on June 20, 2014,

making the ALJ's decision the Commissioner's final decision for purposes of

judicial review.  Tr. 1-6; 20 C.F.R. §§ 404.981, 416.1484, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her disability benefits and supplemental security income under Titles II and XVI of

the Social Security Act.  Plaintiff raises the following three issues for review:

(1)  Whether the ALJ properly discounted Plaintiff's credibility;

(2)  Whether the ALJ properly weighed the medical opinion evidence; and

(3) Whether the ALJ properly conducted a step four analysis.

ECF No. 14.  This Court addresses each issue in turn.

## DISCUSSION

### A.    Adverse Credibility Finding

"In assessing the credibility of a claimant's testimony regarding subjective

pain or the intensity of symptoms, the ALJ engages in a two-step analysis."

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

*Molina*, 674 F.3d at 1112 (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.

2009)).  First, the ALJ must determine whether the claimant has proved the

existence of a physical or mental impairment with "medical evidence consisting of

signs, symptoms, and laboratory findings."  20 C.F.R. §§ 416.908, 416.927; *see*

*Molina*, 674 F.3d at 1112.  A claimant's statements about his or her symptoms

alone will not suffice.  20 C.F.R. §§ 416.908, 416.927.  "Once the claimant

produces medical evidence of an underlying impairment, the Commissioner may

not discredit the claimant's testimony as to subjective symptoms merely because

they are unsupported by objective evidence."  *Berry v. Astrue*, 622 F.3d 1228,

1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995));

*Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  As long as the

impairment "could reasonably be expected to produce the pain or other

symptoms," the claimant may offer a subjective evaluation as to the severity of the

impairment.  *Bunnell*, 947 F.2d at 345-56.  This rule recognizes that the severity of

a claimant's symptoms "cannot be objectively verified or measured."  *Id.* at 347

(citation omitted).

However, an ALJ may conclude that the claimant's subjective assessment is

unreliable, so long as the ALJ makes "a credibility determination with findings

sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not

arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958

(9th Cir. 2002); *see also Bunnell*, 947 F.2d at 345 ("[A]lthough an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion.").  If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing."  *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted).  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *see Berry*, 622 F.3d at 1234 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

In weighing the claimant's credibility, the ALJ may consider many factors, including "'(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'"  *Chaudry*, 688 F.3d at 672 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)).  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.  *Id.* (quoting *Tommasetti*, 533 F.3d at 1039).

Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  Tr. 20. Because there is no evidence of malingering in this case, the Court must determine whether the ALJ provided specific, clear, and convincing reasons not to credit Plaintiff's testimony regarding the limiting effect of her symptoms.  *Chaudhry*, 688 F.3d at 672.

As a threshold issue, Plaintiff faults the ALJ for applying the incorrect standard of disability when assessing her credibility.  Specifically, the ALJ stated that "the combined medical evidence of record and the claimant's own statements and testimony simply do not support a finding that the claimant's obesity rises to the level of a disabling impairment resulting in a complete inability to engage in *any and all work activities*."  Tr. 20.  Similarly, when assessing the veracity of Plaintiff's statements concerning her mental impairments, the ALJ stated that "the totality of the evidence of record simply does not support a finding that the claimant's mental impairments rise to the level of disabling impairments prohibiting the claimant from performing *any and all work*."  Tr. 21.  Rather, the correct definition of disability is the inability "to engage in any substantial gainful

1    activity . . . for a continuous period of not less than [twelve] months."  42 U.S.C.

2    §§ 423(d)(1)(A), 1382c(a)(3)(A).

3        This Court does not find reversible error.   When the ALJ made these

4    statements concerning Plaintiff's alleged inability to engage in any and all work,

5    she was not making a determination of substantial gainful activity.  *See* Tr.22.

6    Rather, the ALJ was merely assessing the veracity of Plaintiff's "allegations of

7    totality inability to engage in work activities."  Tr. 23.  To the extent that the ALJ's

8    characterization of the disability standard was in error, this Court will decline to

9    reverse an ALJ's decision on account of harmless error, which is defined as an

10   error that is "inconsequential to the [ALJ's] ultimate nondisability determination."

11   *Molina*, 674 F.3d at 1111, 1115.   Ultimately, the ALJ found that Plaintiff had the

12   RFC—that is, the ability to do physical and mental work activities on a *sustained*

13   basis despite limitations from her impairments—to engage in past relevant work as

14   an agricultural produce packer and industrial cleaner.   Thus, although she might

15   have used the phrase "any and all work" at two points in her decision, this error

16   was inconsequential to the ALJ's ultimate nondisability determination which

17   applied the correct definition of disabled.

18       Although Plaintiff contends that the ALJ improperly conducted an adverse

19   credibility analysis, this Court disagrees.  The ALJ provided the following specific,

20   clear, and convincing reasoning supported by substantial evidence for finding

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

Plaintiff's subjective statements not fully credible: (1) Plaintiff had been inconsistent in statements regarding her past drug use; (2) Plaintiff's allegations of disability are inconsistent with her daily activities; and (3) Plaintiff's failure to consistently follow treatment protocols is inconsistent with her allegations of total disability.  Tr. 20-23.

First, the ALJ found Plaintiff had made contradictory statements regarding her past drug use: "[A]t times she reported that she has 'never used street drugs' and denied any history of drug or alcohol problems or treatments, while on other occasions she endorsed a history of cocaine dependence and stated she had served significant jail time for drug-related charges."  Tr. 22 (citing Tr. 283, 426, 443, 449).  The ALJ noted that one of Plaintiff's medical providers had found the same pattern of denial regarding drug use.  Tr. 22 (citing Tr. 462).  The ALJ concluded that Plaintiff's lack of candor regarding her drug use cast doubt on the veracity of her other statements:

> These inconsistent and inaccurate reports by the claimant regarding her drug use give the undersigned pause to consider the claimant's credibility.  Her unwillingness to be forthcoming, especially on a matter of such importance to her treatment providers, is troubling at the very least.  It casts doubt on the credibility of all of the claimant's reports.

 Tr. 22.  The ALJ's statement at the hearing, characterizing Plaintiff's denial of cocaine dependence in a different light, *see* TR. 51, does not negate the record

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

evidence she used to support her final conclusion in the written decision.  Because the ALJ may employ "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying . . . and other testimony by the claimant that appears less than candid" when assessing the Plaintiff's credibility, the ALJ provided a permissible reason for not fully crediting Plaintiff's testimony.  *See Chaudry*, 688 F.3d at 672; *see also Thomas*, 278 F.3d at 959 ("[T]he ALJ found that [the claimant] had not been a reliable historian, presenting conflicting information about her drug and alcohol usage . . . this lack of candor carries over to her description of physical pain.").

Second, the ALJ found numerous notations within the record demonstrating Plaintiff's failure to follow a prescribed course of treatment, take her medications as directed, and show up for her appointments.  Tr. 22 (citing Tr. 305, 346, 362, 364, 366, 570).  The ALJ specifically highlighted the following:

> Grant County Mental Health treatment records from August 2011 note the claimant did not attend any of her appointments with her primary clinician and was discharged from mental health services due to non-compliance. Treatment records from Pioneer Medical Center also note the claimant frequently failed to show up for her appointments and did not call ahead of time to cancel. Ultimately, the undersigned simply finds such indifference to her recommended treatments inconsistent with the claimant's allegations of total disability due to severe mental health symptoms and other limitations.

Tr. 22 (citations to the record omitted).  Plaintiff's inadequately explained failure to follow a prescribed course of treatment provided another clear and convincing

reason for discounting her credibility.  *See Tommasetti*, 533 F.3d at 1039 (finding

that a plaintiff's "unexplained or inadequately explained failure to seek treatment"

provided legitimate reason for rejecting claimant's credibility); *see also* SSR 96-

7p[2] ("[A]n individual's statements may be less credible if . . . the medical reports

or records show that the individual is not following the treatment as prescribed and

there are not good reasons for this failure.").

Finally, the ALJ found that "the claimant's own statements and

demonstrated activities of daily living have been inconsistent with her allegations

of disability."  Tr. 22.  In support, the ALJ noted the following:

> Specifically, the claimant alleged that, due to her impairments, she
> experiences limitations on her ability to remember, concentrate,
> understand, follow instructions and get along with others.  However,
> despite these allegations, the claimant stated that she is able to clean,
> cook meals, and do laundry on a regular basis, indicating a good
> ability to remember and complete tasks. The claimant also stated that
> she is able to use public transportation and go shopping on a regular
> basis, indicating a good ability to get along with others on at least a
> superficial level.  Additionally, despite the claimant's allegations that
> she suffers from significant cognitive difficulties and is unable to
> follow instructions, treatment records from November 2011 clearly
> show the claimant was able to follow a three-step instruction,
> complete serial 7's and spell the word "world" forward and backward.

---

[2] Plaintiff's reliance on SSR 82-59, which applies when a claimant refuses to

follow a physician's prescribed treatment which is clearly expected to restore the

capacity to engage in any substantial gainful activity, is inapplicable to the facts

here.  *See Molina*, 674 F.3d at 1114 n.6.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

> Ultimately, the undersigned finds the claimant's numerous inconsistent statements and ability to perform activities of daily living independently significantly question the claimant's credibility as it pertains to the nature, intensity, frequency, persistence and limiting effect of her physical and mental impairments.

Tr. 22-23 (citations to the record omitted).  These inconsistencies between Plaintiff's alleged limitations and her reported daily activities provided a final permissible reason for discrediting Plaintiff's credibility."  *See Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *see also Garrison*, 759 F.3d at 1016 ("[O]nly if [a claimant's] level of activity were inconsistent with a claimant's claimed limitations would these activities have any bearing on her credibility." (alterations omitted)).

The ALJ presented other reasons for discounting Plaintiff's credibility, which reasons Plaintiff asserts were not properly supported.  For instance, the ALJ accused Plaintiff of concealing her ability to work, citing treatment records from January 2011 that "clearly show the claimant reported she was working 8 to 12 hours a day 6 to 7 days a week at an agricultural food company."  Tr. 21 (citing Tr. 403).  Plaintiff asserts other evidence in the record demonstrates that she was not working in 2010 or 2011 and that the record relied upon by the ALJ was outdated.  ECF No. 14 at 24-25.  Even if this Court were to find the ALJ erred, any error is

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

harmless where substantial evidence supports the ALJ's ultimate adverse

credibility finding.  *See Molina*, 674 F.3d at 1115 ("[S]everal of our cases have

held that an ALJ's error was harmless where the ALJ provided one or more invalid

reasons for disbelieving a claimant's testimony, but also provided valid reasons

that were supported by the record.").  Accordingly, because the ALJ provided

specific, clear, and convincing reasons for discounting Plaintiff's credibility, this

Court does not find error.

### B.   Medical Opinions

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan*, 246 F.3d at 1201-02 (citations omitted).  A treating physician's opinions

are generally entitled to substantial weight in social security proceedings.  *Bray v.*

*Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  If a treating or

examining physician's opinion is uncontradicted, an ALJ may reject it only by

offering "clear and convincing reasons" that are supported by substantial evidence

in the record.  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir.

2008); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the

ALJ need not accept the opinion of any physician, including a treating physician, if

that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation omitted).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012. "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13.

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing "specific and legitimate reasons" that are supported by substantial evidence in the record. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725).

### 1.  Brooke Sjostrom, MS, LMHC

Plaintiff first contends the ALJ did not give sufficient weight to the findings of Ms. Sjostrom.  ECF No. 14 at 5-10.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

Ms. Sjostrom, a mental health therapist, conducted a psychological evaluation in November 2010.  Tr. 439-448.  As noted in the report, Plaintiff had marked limitations in her abilities to relate appropriately to coworkers and supervisors and to respond appropriately to and tolerate the pressures and expectations of a normal work setting.  Tr. 444.  Based on these limitations, Ms. Sjostrom opined that Plaintiff's mental impairments are likely to impede her motivation to reliably attend to work-related duties, may interfere with social interactions and ability to respond appropriately to criticism, likely to interfere with her interpersonal relationships and ability to maintain appropriate behavior in work setting, and likely to interfere with her interpersonal relationships and ability to maintain appropriate behavior in a work setting.  Tr. 441.  This opinion was reportedly based on behavioral observations made throughout the evaluation and Plaintiff's self-reported mood, anxiety, and anger symptoms.  Tr. 444.

This Court finds that ALJ properly evaluated the opinion of Ms. Sjostrom. Because this opinion was contradicted, *see* Tr. 24 (noting that Plaintiff's treating physician, Dr. Harpeet Chhokar, opined that Plaintiff was capable of returning to work with no restrictions), the ALJ need only have provided "specific and legitimate" reasoning for rejecting it.  *Bayliss*, 427 F.3d at 1216.

1    As a preliminary matter, Plaintiff faults the ALJ for discounting Ms.

2    Sjostrom's opinion because she is not an "acceptable medical source" and ignoring

3    Dr. Genthe's supervisory role entirely.  ECF No. 14 at 7.

4    Generally, a mental health therapist is not an "acceptable medical source"

5    within the meaning of 20 CFR §§ 404.1513, 416.913; rather, a mental health

6    therapist is more appropriately characterized as an "other source" and her opinions

7    about the nature and severity of a claimant's impairments are not entitled to

8    controlling weight.  SSR 06-03p (including therapists under the "other sources"

9    category).  That being said, to the extent the record shows an "other source" was

10   "working closely with, and under the supervision of [an acceptable medical

11   source], her opinion is to be considered that of 'an acceptable medical source.'"

12   *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011); *cf.*

13   *Molina*, 674 F.3d at 1111 (finding that a physician's assistant, an "other source,"

14   did not otherwise qualify as a medically acceptable source because the record did

15   not show she worked under a physician's close supervision).

16   This Court finds insufficient support in the record to find that Ms. Sjostrom

17   "was working closely with, and under the supervision of" Dr. Genthe.  Ms.

18   Sjostrom's report merely lists Dr. Genthe as the "Supervising Licensed

19   Psychologist."  Tr. 448.  There is no other evidence in the record to demonstrate

20   that Ms. Sjostrom developed her report under the close supervision of Dr. Genthe.

1    Even if this Court were to treat Ms. Sjostrom's opinion as that of an

2  acceptable medical source, the ALJ provided specific and legitimate reasons for

3  affording her opinion "no significant weight."   First, the ALJ found that "Ms.

4  Sjostrom appears to have based her conclusions about the claimant's purported

5  mental limitations entirely on her subjective reports." Tr. 24.  To support this

6  finding, the ALJ noted that "although Ms. Sjostrom opined the claimant had

7  marked limitations on her ability to respond appropriately to and tolerate the

8  pressures and expectation of a normal work setting, Ms. Sjostrom specifically

9  noted that the claimant demonstrated a normal stress tolerance on mental status

10  examination." Tr. 24-25 (citing Tr. 444, 447).  Thus, although the report states that

11  its conclusions are based on both subjective reports and behavioral observations, it

12  appears some conclusions relied exclusively on subjective reporting.   Because the

13  ALJ found Plaintiff's subjective reports of her symptoms and limitations to be less

14  than credible, as detailed above, this provided a legitimate reason for rejecting Ms.

15  Sjostrom's opinion.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)

16  ("If a treating provider's opinions are based 'to a large extent' on an applicant's

17  self-reports and not on clinical evidence, and the ALJ finds the applicant not

18  credible, the ALJ may discount the treating provider's opinion." (quoting

19  *Tommasetti*, 533 F.3d at 1041)).

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

Second, the ALJ found Ms. Sjostrom's opinion was inconsistent with Plaintiff's reported daily activities.  Tr. 25.  As noted earlier in the AJ's decision, although Plaintiff alleged that she suffered from mental limitations—including difficulty getting along with others—her daily activities indicated that she in fact could at least get along superficially with others.  Tr. 22.  Accordingly, because inconsistency with daily activities provides a legitimate reason for rejecting a medical opinion, *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999), the ALJ's decision is supported by substantial evidence.

Plaintiff faults an additional reason provided by the ALJ as unsupported by the record.  The ALJ stated that Ms. Sjostrom's opinion is inconsistent with treatment records, but the records she cites to—without further explaination—do not appear to contradict Ms. Sjostrom's opinion.  Tr. 25 (citing Tr. 283-87, 571-87).  To the extent the ALJ erred by relying on this additional reason, any error was harmless where she presented other valid reasons to reject Ms. Sjostrom's opinion.  *See Molina*, 674 F.3d at 1115-1120 (discussing the broad application of the harmless error standard).  Accordingly, this Court does not find error.

### 2.  Mark Duris, Ph.D.

Plaintiff also contends that the ALJ did not properly weigh the opinion of Dr. Duris.  ECF No. 14 at 10-15.

1    Dr. Duris conducted a psychological evaluation in June 2011.  Tr. 449-55.

2    Based on his evaluation, Dr. Duris opined that Plaintiff suffered marked limitations

3    in her ability to communicate and perform in a work setting and moderate

4    limitations in her ability to understand, remember, and persist in tasks following

5    complex instructions and the ability to perform routine tasks without undue

6    supervision.  Tr. 452-53.  Dr. Duris ultimately concluded that Plaintiff was not

7    ready for reentry into the work force and that her limitations would continue to last

8    for six months.  Tr. 453.

9    This Court finds that ALJ properly evaluated the opinion of Dr. Duris.

10   Because his opinion was contradicted, *see* Tr. 24 (noting that Plaintiff's treating

11   physician, Dr. Harpeet Chhokar, opined that Plaintiff was capable of returning to

12   work with no restrictions), the ALJ need only have provided "specific and

13   legitimate" reasoning for rejecting it.  *Bayliss*, 427 F.3d at 1216.

14   The ALJ provided the following specific and legitimate reasons for

15   affording Dr. Duris' opinion "[n]o significant weight.  Tr. 24.  First, the ALJ found

16   Dr. Duris' opinion appeared to be based "solely on [Plaintiff's] subjective reports"

17   Tr. 24.  Further, there appeared to be inconsistencies in Dr. Duris' own report.  For

18   instance, although Dr. Duris opined that Plaintiff had moderate difficulties with

19   concentration and following instructions, he also noted—based on his own

20   examination—that Plaintiff had a normal concentration and memory and was able

to complete serial 3's and spell the word "world" forward and backward.  Tr. 24 (citing Tr. 455).  Because the ALJ found Plaintiff's subjective reports of her symptoms and limitations to be less than credible, as detailed above, this provided a legitimate reason for rejecting Dr. Duris' opinion.  *See Ghanim* , 763 F.3d at 1162.  Further, because inconsistencies between a doctor's opinion and his own reports, provide a specific and legitimate reason for rejecting even a treating doctor's opinion, *see Bayliss*, 427 F.3d at 1216 (finding a discrepancy between a doctor's opinion and his other recorded observations and opinions provided a clear and convincing reason for not relying on that doctor's opinion), the ALJ provided another specific and legitimate reason for rejecting Dr. Duris' opinion.

Second, the ALJ highlighted that "Dr. Duris' assessment does not identify any disabling limitations as a result of the claimant's conditions that were expected to last for at least 12 continuous months or more."  Tr. 24.  Specifically, Dr. Duris opined that Plaintiff's mental health limitations were only expected to last six months.  Tr. 24 (citing Tr. 453).  Because a disabling limitation must be expected to last for at least one year for purposes of benefits, 42 U.S.C.  § 423(d)(1)(A), 1382c(a)(3)(A), this provided another legitimate reason to discount Dr. Duris' opinion.

Finally, the ALJ found Dr. Duris' opinion inconsistent with the medical testimony of Kent B. Layton, Psy.D.  Tr. 24.  As noted by the ALJ earlier in her

decision, Dr. Layton questioned the reliability of Plaintiff's subjective allegations

of mental symptomatology based on his review of the medical evidence in its

entirety, Plaintiff's benign mental status examinations, inconsistent objective test

results, and numerous inconsistencies.  Tr. 23.  Because contrary opinions provide

a specific and legitimate reason for rejecting a medical opinion, *see Tonapetyan v.*

*Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), the ALJ provided another specific

and legitimate reason for rejecting Dr. Duris' opinion.

Plaintiff faults two additional reasons provided by the ALJ as unsupported

by the record.  For one, the ALJ stated that Dr. Duris' opinion is inconsistent with

treatment records, but the records she cites to—without further explanation—do

not appear to contradict Dr. Duris' opinion.  Tr. 24 (citing Tr. 283-87, 439-448,

456-66).  Further, the ALJ faults Dr. Duris for not questioning the lack of

longitudinal health records, despite the fact that Plaintiff's health records date back

more than a decade. Tr. 24; *see* Tr. 467-568.  To the extent the ALJ erred by

relying on these reasons, any error was harmless where she presented other valid

reasons to reject Dr. Duris' opinion.  *See Molina*, 674 F.3d at 1115-1120

(discussing the broad application of the harmless error standard).  Accordingly, this

Court does not find error.

///

///

### 3.  Aaron R. Burdge, Ph.D

Plaintiff also contends the ALJ improperly rejected the opinion of Dr.

Burdge.  ECF No. 14 at 15-20.

Dr. Burdge conducted a psychological examination of Plaintiff in November

2011.  Tr.  456-66.  Based on his examination, Dr. Burdge opined that Plaintiff's

problematic personality traits—predominately those related to antisocial and

borderline features—may interfere with a Plaintiff's ability to function

appropriately in social, work, and school settings.   Tr. 465.

This Court finds that ALJ properly evaluated the opinion of Dr. Burdge.

Because his opinion was contradicted, *see* Tr. 24 (noting that Plaintiff's treating

physician, Dr. Harpeet Chhokar, opined that Plaintiff was capable of returning to

work with no restrictions), the ALJ need only have provided "specific and

legitimate" reasoning for rejecting it.  *Bayliss*, 427 F.3d at 1216.

The ALJ provided the following specific and legitimate reasons for rejecting

the opinion of Dr. Burdge.  First, The ALJ provided the following specific and

legitimate reasons for affording Dr. Burdge's opinion "[n]o significant weight.  Tr.

25.  First, the ALJ found Dr. Burdge's opinion appeared to be based "solely on

[Plaintiff's] subjective reports."  Tr. 25.  Further, there appeared to be

inconsistencies in Dr. Burdge's own report.  For instance, although Dr. Burdge

opined that Plaintiff was limited in her ability to understand, remember, and carry

1    out detailed instructions, the ALJ noted that Dr. Burdge's own mental status

2    examination of Plaintiff clearly showed Plaintiff's ability to follow both simple and

3    complex instructions, including a three-step command.  Tr. 25 (citing Tr. 455).

4    Because the ALJ found Plaintiff's subjective reports of her symptoms and

5    limitations to be less than credible, as detailed above, this provided a legitimate

6    reason for rejecting Dr. Burdge's opinion.  *See Ghanim* , 763 F.3d at 1162.

7    Further, because inconsistencies between a doctor's opinion and his own reports,

8    provide a specific and legitimate reason for rejecting even a treating doctor's

9    opinion, *see Bayliss*, 427 F.3d at 1216 (finding a discrepancy between a doctor's

10   opinion and his other recorded observations and opinions provided a clear and

11   convincing reason for not relying on that doctor's opinion), the ALJ provided

12   another specific and legitimate reason for rejecting Dr. Burdge's opinion.

13        Finally, the ALJ found Dr. Burdge's opinion inconsistent with the medical

14   testimony of Dr. Layton, the medical expert.  Tr. 25.  As noted by the ALJ earlier

15   in her decision, Dr. Layton questioned the reliability of Plaintiff's subjective

16   allegations of mental symptomatology based on his review of the medical evidence

17   in its entirety, Plaintiff's benign mental status examinations, inconsistent objective

18   test results, and numerous inconsistencies.  Tr. 23.  Because contrary opinions

19   provide a specific and legitimate reason for rejecting a medical opinion, *see*

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 27

1    *Tonapetyan*, 242 F.3d at 1149, the ALJ provided another specific and legitimate

2    reason for rejecting Dr. Burdge's opinion.

3            Plaintiff faults an additional reason provided by the ALJ as unsupported by

4    the record.  The ALJ stated that Dr. Burdge's opinion is inconsistent with treatment

5    records, but the records she cites to—without further explanation—do not appear

6    to contradict Mr. Burdge's opinion.  Tr. 25 (citing Tr. 283-87, 439-48, 449-455).

7    To the extent the ALJ erred by relying on this additional reason, any error was

8    harmless where she presented other valid reasons to reject Dr. Burdge's opinion.

9    *See Molina*, 674 F.3d at 1115-1120 (discussing the broad application of the

10   harmless error standard).  Accordingly, this Court does not find error.

11           **C.    Hypothetical Question Posed to Vocational Expert**

12           "Hypothetical questions posed to the vocational expert must set out *all* the

13   limitations and restrictions of the particular claimant…."  *Embrey v. Bowen*, 849

14   F.2d 418, 422 (9th Cir. 1988).  "Unless the record indicates that the ALJ had

15   specific and legitimate reasons for disbelieving a claimant's testimony as to

16   subjective limitations such as pain, those limitations must be included in the

17   hypothetical in order for the vocational expert's testimony to have any evidentiary

18   value."  *Id.* at 423.  "If the assumptions in the hypothetical are not supported by the

19   record, the opinion of the vocational expert that claimant has a residual working

20

capacity has no evidentiary value." *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984).

Plaintiff contends the hypothetical question posed to the vocational expert did not adequately express the full extent of her limitations.  ECF No. 14 at 27. Specifically, Plaintiff contends the question posed did not include impact of limitations noted by Dr. Genthe, Dr. Duris, Dr. Burdge, Ms. Sjostrom, and Plaintiff.  *Id.*  As such, Plaintiff contends the ALJ's reliance on the vocational expert's answer to this incomplete hypothetical was in error.

This Court disagrees.  The ALJ included the full extent of *credible* limitations supported by the record.  This argument is derivative of Plaintiff's arguments concerning the ALJ's rejection of her credibility and medical opinions, discussed in detail above.  As previously noted by this Court, the ALJ properly rejected the opinions of Dr. Genthe, Dr. Duris, Dr. Burdge, and Ms. Sjostrom and the statements of Plaintiff.  Given that the ALJ properly rejected this evidence, no error has been shown.

///

///

///

///

///

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 17) is

   **GRANTED**.

The District Court Executive is directed to file this Order, enter

**JUDGMENT** for Defendant, provide copies to counsel, and **CLOSE** the file.

**DATED** August 6, 2015.



THOMAS O. RICE
United States District Judge